# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY WAYNE PARKS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | 1:10-cv-01955 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## BACKGROUND

Plaintiff Jerry Wayne Parks ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 & 10.)

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed applications for disability and supplemental security income benefits in March 2006, alleging disability beginning February 15, 2001. AR 145-151. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 92-95, 98, 100-104, 106. ALJ Michael J. Haubner held a hearing and issued an order denying benefits on March 13, 2009, finding that Plaintiff was not disabled. AR 10-22. On September 10, 2010, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Haubner held a hearing on September 18, 2008, in Fresno, California. Plaintiff appeared and testified; he was assisted by attorney Melissa Proudian. Vocational Expert ("VE") Cheryl Chandler also testified. AR 23-57.

Plaintiff was born December 9, 1956. He graduated from high school and received "vocational training on the job." AR 29. Plaintiff lives with his wife and her fourteen-year-old daughter. AR 30. His wife works at a store. AR 31. Plaintiff has a valid driver's license, without restriction, and drives his pick up three or four times a week. AR 31-32.

When asked how much alcohol he was consuming, Plaintiff indicated that he no longer drinks alcohol, having quit in September of 2007. AR 30. He did not attend Alcoholics Anonymous or similar therapy, rather he quit on his own with the support of his family. AR 30.

With regard to personal needs, Plaintiff indicated that "[m]ost of the time" he can brush his own teeth, bathe or shower, and put his clothes on. AR 33. However, during the winter months, he needs assistance every day to button his shirt or pants, or pick up his utensils to eat. AR 33. His wife shaves him. AR 33. Plaintiff makes the bed two or three times a week. AR 32. He can no longer cook, but once a day he can prepare a simple meal such as a bowl of cereal. AR 33. Two or three times a week he is able to clean up after himself and do the dishes. AR 33-34. He does not do laundry any longer and does not iron clothes. AR 34-35, 37. He empties the trash once a week. AR 35. Plaintiff does not sweep or vacuum, and mops only if he spills

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

something. When he was asked how often he had mopped in the previous year, Plaintiff stated "a couple times." AR 36. He does not do any yard work of any kind. AR 34.

When asked how long it had been since he last did grocery shopping, Plaintiff replied it had been about two years. AR 35. He attends church once a week, but is not involved in any other social groups or organizations. AR 35-36. He visits with others outside the home two to three times a week, and talks on the phone three to four times a day. AR 36.

Plaintiff does care for a Chihuahua, providing it food and water, but he cannot give the dog a bath. AR 34. He walks the dog every day for about fifteen minutes. AR 34.

When asked how he passed the time, Plaintiff indicated that he watches some television and is "up and down more than anything else." AR 37. He estimated he watches about two hours of television a day; he does not read either newspapers or books. AR 37.

After identifying his various physical conditions and impairments, Plaintiff indicated he has difficulty picking up and grasping items. AR 38-39. He can hold smaller objects like a pen or a coffee cup for about an hour during the course of a day, and for about fifteen minutes at one time. AR 39-40. After gripping or grasping an object for fifteen minutes, Plaintiff would have to rest for about two hours before doing so again. AR 40. When he was asked how much weight he could lift and carry, Plaintiff responded "about 5 pounds . . . 2 to 5." AR 41. He can stand for ten to fifteen minutes before needing to sit down and rest, and can sit for about twenty to twenty-five minutes before needing to get up and move around. AR 41. Within a normal eight-hour period during the day, Plaintiff must lie down for about two hours. AR 42. He does so due to the gout in his leg. AR 53. Plaintiff can focus and pay attention for about fifteen minutes before losing concentration. AR 41.

When asked whether he was fully compliant with treatment recommendations and medications, Plaintiff indicated he was about seventy-five percent compliant and the "cost [is] the problem." AR 42; *see also* AR 53. Plaintiff indicated he is "supposed to be on morphine," however he cannot afford it. AR 54. His medications do not cause side effects. AR 42. Plaintiff's condition has worsened since 2001 and he feels constant pain in his entire body. AR 42-43. His pain is a seven and a half to eight on a scale of one to ten. AR 42-43. He has not had

to seek treatment for his pain in an emergency room within the last two years, but did go to the emergency room about five years ago. AR 43.

VE Chandler indicated that Plaintiff's past work includes work as an auto body repairman or auto technician, skilled with an SVP[3] of seven, performed at the heavy exertional level. AR 45. During the course of that work, Plaintiff's skills included the ability to read and interpret instructions regarding maintenance and repairs, consult reference materials, order equipment and parts, estimate time and perform computations, use hand and power tools, and employ basic oral and written communication skills. AR 45. Those skills offer limited transferability because they are "industry-specific." AR 45.

The VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, whom can lift and carry twenty pounds occasionally and ten pounds frequently, can stand and walk about six hours in an eight-hour day and sit for six hours in an eight-hour day, can occasionally climb, balance, stoop, kneel, crouch, and crawl, whom should avoid concentrated exposure to extreme heat and cold, vibration, uneven terrain, machinery, and heights. AR 45-46. VE Chandler indicated such an individual would be unable to perform Plaintiff's past relevant work. AR 46. Nevertheless, the VE indicated such an individual could perform other work. AR 46. More particularly, the individual could perform the work of an auto parts counter salesperson, semiskilled and light. AR 46. At the light level, there are about 6,000 such positions available in California; national figures are obtained by multiplying by ten. AR 47. VE Chandler indicated Plaintiff's past relevant work skills would be utilized in such a position. AR 47. Additionally, the hypothetical worker could also perform unskilled work in the form of counter salesperson and cashier, with 6,000 and 115,000, positions, respectively, available in California. AR 47.

In a second hypothetical, the VE was asked to assume an individual capable of managing funds, with the ability to remember locations and worklike procedures, understand, remember and carry out short and simple instructions, maintain attention and concentration for extended

---

[3]"SVP" refers to specific vocational preparation.

periods, accept criticism and behave appropriately; the individual would not require constant supervision, can complete a normal workday and workweek, and can interact with coworkers and the general public. AR 47-48. VE Chandler indicated such an individual could perform Plaintiff's past work, the entire world of unskilled work at all exertional levels, and the auto parts sales position previously mentioned. AR 48.

In a third hypothetical, VE Chandler was asked to consider an individual whom can lift and carry twenty pounds frequently and forty pounds occasionally, can sit for eight hours, stand for four hours in an eight-hour period and walk for four hours in an eight-hour period, can frequently reach, handle, finger, push and pull, but is limited in upper extremity overhead reaching; the individual can use foot controls, balance, occasionally climb stairs, ramps, ladders, ropes and scaffolds, stoop, kneel, crouch and crawl, can occasionally work around unprotected heights and moving parts, whom can frequently operate a motor vehicle, and withstand extreme temperatures, dust, fumes, odors, gasses and vibrations. AR 50-51. The VE indicated such an individual would be unable to perform Plaintiff's past relevant work, but could perform the work previously identified in hypothetical question number one. AR 51. VE Chandler agreed that combining hypothetical questions two and three would provide the same result as that for hypothetical number three. AR 52.

In a fourth hypothetical, the VE was to consider Plaintiff's testimony: that the individual could lift and carry five pounds, could concentrate for fifteen minutes at one time, could grip or grasp an object for fifteen minutes then must rest for two hours before resuming the activity, could sit for twenty to twenty-five minutes at a time, walk for fifteen minutes at a time, and must lie down for two hours in an eight-hour period, with a limitation to occasional overhead reaching in both upper extremities. AR 52. VE Chandler indicated such an individual would be unable to perform either Plaintiff's past work or any other work in the national economy. AR 52-53.

**Medical Record**

The entire medical record was reviewed by the Court. AR 233-676. The medical evidence will be referenced below if necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 10-22.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 15, 2001. AR 12. Further, the ALJ identified the following severe impairments: cervical, thoracic, and lumbar spine degenerative disc disease; lumbar facet syndrome; alcoholic polyneuropathy and progressive peripheral neuropathy; probable degenerative tendinitis of the right shoulder; and gastroesophageal reflux disease. AR 12-14. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments do not meet or exceed any of the listed impairments. AR 14.

Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC to lift and carry forty pounds occasionally and twenty pounds frequently, stand and/or walk for four hours in an eight-hour day and sit for eight hours in an eight-hour workday, is unable to reach overhead with his right hand, but is otherwise able to reach, handle, finger, push and pull frequently, may use foot controls frequently, may balance frequently and stoop, kneel, climb, crouch and crawl occasionally, may work around unprotected heights and around moving parts occasionally, may operate a vehicle frequently and walk around wet, heat, cold and vibration occasionally, and is able to perform the activities of daily living without an assistive device. AR 14-21.

Next, the ALJ determined that Plaintiff could not perform his past relevant work. AR 21. Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Specifically, the ALJ found that Plaintiff could perform the work of an auto parts counter salesperson, counter salesperson or cashier. AR 21-22.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial

evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the VE failed to specify Plaintiff's transferable job skills. Further, Plaintiff argues error occurred because the VE's testimony was inconsistent with the DOT and the ALJ did not comply with the requirements of Social Security Ruling ("SSR") 00-4p. (*See* Doc. 12; *see also* Doc. 15 [VE failed to state which skills transferred to requirements of auto parts sales position].)

**DISCUSSION**

Plaintiff argues the ALJ erred at step five. More particularly, he argues the ALJ was required to specifically identify which of his job skills were transferable, and that the VE's testimony regarding representative occupations available to Plaintiff was not consistent with the DOT, and relatedly, that the ALJ failed to comply with the requirements of SSR 00-4p. The Commissioner contends the ALJ properly relied upon the VE's testimony.[4]

At step five of the sequential analysis, if the impairment prevents the claimant from performing his or her past work, a determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy is necessary; if so, the claimant is not disabled and the analysis ends. 20 C.F.R. §§ 404.1520(a)-(e) & 416.920(a)-(g). At this stage of the analysis, the ALJ should consider the claimant's RFC and vocational factors such as age, education, and past work experience. 20 C.F.R. §§ 404.1520(f) & 416.920(f).

The Commissioner bears the burden of establishing the existence of alternative jobs available to the claimant, given his or her age, education, and medical-vocational background. In an appropriate case, the Commissioner may meet this burden through application of the medical-vocational guidelines set forth in the regulations.[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). If the guidelines do not accurately describe a claimant's limitations, the Commissioner may not rely on them alone to show availability of jobs for the claimant. *Desrosiers v. Secretary*, 846 F.2d 573 (9th Cir. 1988).[6]

---

[4] The Commissioner's opposition brief fails to cite to relevant case law in its discussion of this issue with the exception of a single reference to *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007) regarding harmless error.

[5] For any given combination of factors (RFC, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

[6] However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of the guidelines. Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Secretary will be required to obtain expert vocational testimony regarding the availability of other work. *See, e.g.*, *Polny v. Bowen,* 864 F.2d 661 (9th Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); *Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985). Pain has been recognized as a non-exertional limitation which can significantly limit one's ability to perform basic work skills. *See Perminter,* 765 F.2d at 872.

SSR 00-4p states that generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *See* SSR 00-4p. The ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so. *Id.*

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] . . . evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Where the ALJ fails to ask the VE is the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.*

Here, the exchange between the ALJ and the VE was confusing, at best. Significant portions of the transcript pertaining to this issue are noted to be inaudible. *See* AR 44-52. In any event, this Court's review of the record reveals remand is warranted.

In his findings of March 13, 2009, ALJ Haubner noted as follows:

> The claimant has past relevant work as an auto body repair technician. Vocational expert testimony established that the claimant's past relevant work is skilled and performed at the medium exertional level, according to the *Dictionary of Occupational Titles*, but heavy work as the claimant performed it. She further testified that the claimant's residual functional capacity precludes work as an auto body repair technician. Accordingly, the Plaintiff is unable to perform past relevant work.

AR 21.

With regard to transferable skills, the ALJ noted that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." AR 21. A brief subsequent reference follows: "[The VE] testified . . . representative occupations such as auto parts counter sales, with 6,000 jobs in California [were

available]. This is a light, semi-skilled job, *but utilizes the claimant's transferable skills*." AR 22, emphasis added.

In relevant part, SSR 82-41 states:

> When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation. When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision. Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included (the regulations take administrative notice only of the existence of unskilled sedentary, light, and medium jobs in the national economy). This evidence may be VS statements based on expert personal knowledge or substantiation by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d). It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

First, ALJ Haubner's written decision does not recite the skills identified by the VE as required. AR 10-22. VE Chandler's testimony identified the following skills Plaintiff obtained while working as an auto body repairman: "[b]eing able to read and . . . interpret instructions in terms of maintenance and repairs, refer to reference materials, order equipment and parts, estimate time, math skills, some basic oral and written communications." AR 45.[7] The following colloquy then occurred:

> [ALJ] Q Hand and power tools?
> [VE] A Yes, sir, (INAUDIBLE) specialized equipment.
> Q Transferability?
> A It's fairly industry-specific, Your Honor. There may be some (INAUDIBLE) where a person could transfer to sales the knowledge that they have, the technical knowledge. But otherwise, it's really not.

---

[7] ALJ Haubner did not elicit any testimony from Plaintiff about his past work as an auto body repairman. See AR 23-43. Substantial gainful activity earnings were last reported in 2001. AR 154. In an undated Disability Report - Adult form, Plaintiff indicated he worked as an auto technician at an auto body business from 1986 to 2001. AR 163. At page 227 of the administrative record, Plaintiff's work history includes ownership of Wayne Parks' Garage from 1980 to June 1996, and fleet manager for Pacific Bell from September 1996 to September 1999. A few pages later however, Plaintiff indicated he was self employed until 1996, then worked from September 15, 1996 to September 15, 1999 at "Amacan Auto Servic[e]." AR 232. Notably too, the ALJ's findings include the following statement: "Regarding the claimant's work history, it is quite marginal with only six full substantial gainful activity years in the past 15, and only 14 full substantial gainful activity years in his entire lifetime." AR 20, internal citation omitted.

> Q So, it's very limited transferability?
> A Yes, sir.

AR 45. Thereafter, the ALJ posed his first hypothetical and the VE identified a light, semiskilled auto parts counter sales position as available to the hypothetical worker. AR 46. ALJ Haubner then asked, "and that was semiskilled light auto part sales, and that does use past relevant work skills?" The VE responded affirmatively. AR 47. Then the transcript reveals yet another inaudible portion of the hearing testimony: "Q I'm going to assume little or no vocational (INAUDIBLE). Is that correct? [¶] A Correct." AR 47. While he very may well have said something like, "I'm going to assume little or no vocational *adjustment is necessary*. Is that correct?" this Court will not presume that which cannot be reviewed. As previously noted, the transcript from the administrative hearing reflects a significant number of inaudible portions of the hearing that could not be transcribed.

In *Bray v. Commissioner of Social Security*, 554 F.3d 1219 (9th Cir. 2009), the ALJ did "not identify the particular skills" the claimant possessed, nor did the ALJ - or the vocational expert for that matter - address whether the claimant "would have to undergo more than minimal 'vocational adjustment' to perform successfully the tasks" required of the jobs the expert identified the claimant could do, or otherwise determine whether the skills required by the claimant's past work were "substantially similar to" the ones requires of those jobs. *Id.*, at 1223-1224.

Because the ALJ's written decision does not identify the skills obtained by Plaintiff, and the record is less than certain with regard to whether or not more than minimal adjustment would be needed, this Court cannot find that the ALJ's decision is supported by substantial evidence.

Additionally, ALJ Haubner's RFC finding called for light work. Light work is defined in SSR 83-10 as follows:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of

> arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

ALJ Haubner's RFC finding expressly provides for *four* hours of standing and/or walking, and eight hours of sitting. AR 14. While, as the Commissioner asserts, some jobs in the light work category involve "sitting most of the time," they also require the use of the upper extremities. Yet, again, the ALJ's findings regarding Plaintiff's ability to reach overhead are confusing. During the administrative hearing, the ALJ referenced the internal medicine consultative examination in May 2008, but then changed the examiner's limitation regarding left upper extremity overhead reaching to a limitation of the right upper extremity. AR 48-49. Plaintiff then stated, "[i]t's actually both, sir." AR 49. The VE then indicated she was "a little mixed up" about whether the limitations were "for the right or the left." AR 49. Apparently the ALJ then stated the limitation pertained to the right upper extremity. AR 49 ("Q. [INAUDIBLE] the right").

During the recitation of the hypothetical question posed to the VE, the ALJ stated:

> This person could never reach overhead with the left hand. But, as I said, I think they mean right, based on that. So, never reach overhead with the right hand. Can do frequent reaching, handling, fingering, pushing, and pulling. (INAUDIBLE) overhead reaching.

AR 50.

Following an examination of May 30, 2008, board eligible internist James A. Nowlan, Jr., M.D., noted he reviewed "[a]n MRI of [Plaintiff's] right shoulder [that] showed degenerative

tendonitis." AR 587. In the doctor's range of motion examination findings, left side abnormality results were noted:

> SHOULDER JOINTS: On the left: Abduction 0-110 degrees, adduction 0-5 degrees, internal rotation 0-5 degrees, external rotation 0-60 degrees.
>
> On the right: Forward flexion 0-150 degrees, extension 0-40 degree4s, abduction 0-150 degrees, adduction 0-30 degrees, internal rotation 0-80 degrees, eternal rotation 0-90 degrees.

AR 589. While the ALJ's hypothetical called for no overhead reaching - be it right or left - it appears he then stated the individual could perform "frequent reaching." He may have corrected himself, yet because the transcript of the administrative hearing reflects that portion of the hearing was inaudible, it is not entirely clear a correction occurred. *See* AR 50. It should be noted this Court counted four inaudible portions of the transcript during Plaintiff's testimony, *twenty-two* inaudible portions of the transcript containing the VE's testimony, and four other inaudible portions in the transcript of the administrative proceeding. "[M]eaningful review of an administrative decision requires access to the facts and reasons supporting that decision." *Bray v. Commissioner*, 554 F.3d at 1226, citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).[8]

In sum, and in light of the confusion in this record, this Court finds remand in this matter is appropriate.

---

[8] Where the administrative record is incomplete on a dispositive factual issue, the appropriate course of action is to remand the case to the Secretary for a new hearing. *See Bailey v. Heckler*, 576 F. Supp. 621 (D.D.C. 1984); *see also Williams v. Barnhart*, 289 F.3d 556 (8th Cir. 2002) (remand likely necessary had the "gaps in the transcript . . . interfere[d] with comprehension of the testimony to an extent that would hinder fair review") & *Wislon v. Astrue*, 2009 WL 793039, at *16 (W.D. Pa. 2009) ("The transcript of the administrative hearing contains several inaudible insertions . . . These omissions may be pertinent to the RESIDUAL FUNCTIONAL CAPACITY determination by the ALJ. The court is unable to assess properly the weight the ALJ gave to the VE's responses in his determination . . ."); *Bula v. Commissioner*, 2009 WL 890665, at *9 (N.D. N.Y. 2009) ("There are significant sections of answers from the Plaintiff that are mostly or totally inaudible, and this court cannot adequately review Plaintiff's testimony based on the quality of the transcript produced from the hearing"); *Mullen v. Secretary of Health and Human Services*, 878 F.Supp. 682, 684 (D. Del.1995) ("After reviewing the transcript of the hearing that was furnished by the Office of Hearings and Appeals, the Court finds that good cause for a remand is present in this case. According to the transcript, the entire hearing before the ALJ lasted twelve minutes. Of the twelve minutes, at least three full minutes of testimony were not transcribed because of inaudibility; these untranscribed three minutes constitute the entire testimony of Plaintiff's wife"); *Martinez v. Bowen*, 1988 WL 33911, at * 3 (E.D. Pa. 1988) ("In light of the poor quality of the transcribed record, this court is simply not able to determine whether there was substantial evidence to support the Secretary's decision that plaintiff is not disabled. A remand is therefore appropriate").

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jerry Wayne Parks and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:** **December 13, 2011**

/s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE